IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**JAMI LYNN WOLFE,**

    **Plaintiff**

v.                                 Case No.

                                      **JURY TRIAL DEMANDED**

**WPS HEALTH SOLUTIONS, INC.,**

    **Defendant**

    Serve:        Corporation Service Co.
                     100 Shockhoe Slip, 2nd Floor
                     Richmond, Virginia 23219-4100

## COMPLAINT

COMES NOW the Plaintiff, Jami Lynn Wolfe ("Plaintiff"), by counsel, and as and for her Complaint against the Defendant, WPS Health Solutions, Inc. ("Defendant" or "WPS") states as follows:

### Parties

1.    Plaintiff is a natural person and a resident of the Commonwealth of Virginia and the City of Williamsburg, Virginia.

2.    Defendant is a Wisconsin corporation with its principal office in Madison, Wisconsin and is engaged, *inter alia*, in the insurance industry including providing benefits administration for various Federal health insurance programs. Defendant maintains an office in Hampton, Virginia. Upon information and belief, at all relevant times Defendant has employed in excess of 500 employees and is a non-exempt Federal contractor holding contracts in excess of $10,000.00. Among other things, Defendant states on its website that it provides "worldwide [

. . . ] claims processing and customer service for the U.S. Department of Defense and the U.S. Department of Veterans Affairs." *See https://www.wpshealthsolutions.com/business-units/wpsmvh.shtml.*

## Jurisdiction and Venue

3. This civil action arises under the laws of the United States, specifically, the Americans with Disabilities Act of 1990 and the ADA Amendments Act of 2008. *See* 42 U.S.C. §§ 12101, *et seq.* ("ADA") as well as Section 503 of the Rehabilitation Act of 1973 ("Section 503"). Jurisdiction is proper in this Court.

4. Venue is proper in this District and Division because the Defendant conducts business within the City of Hampton, Virginia and the events complained of herein took place within the geographic bounds of this District and Division.

## Exhaustion of Administrative Remedies

5. Prior to instituting this civil action, Plaintiff timely filed an administrative charge with the Office of Federal Contract Compliance Programs of the U.S. Department of Labor ("OFCCP") alleging that Defendant had discriminated against her under the ADA and Section 503 by, *inter alia*, discriminating and retaliating against her, including termination, due to and in Plaintiff being an individual with a disability and receiving a reasonable accommodation. *See* Exhibit 1.

6. On or about August 5, 2020, the EEOC issued a "right to sue" letter to Plaintiff after failing to resolve the Plaintiff's administrative claim. *See* Exhibit 2. Plaintiff received the right to sue letter via certified mail postmarked August 14, 2020 and delivered August 17, 2020. *See* Exhibit 3. Plaintiff has filed the instant civil action within ninety (90) days of her receipt of the notice authorizing her to file this civil action. *See* Fed. R. Civ. P. 6(a)(1)(c).

**Facts and Background**

7. Plaintiff first began working for Defendant in approximately October of 2017 as a provider certification analyst. Plaintiff's duties included, *inter alia*, processing provider certifications and escalating claims for payment for the Department of Defense's TRICARE military health insurance program. At all relevant times, Plaintiff worked out of Defendant's Hampton office. The essential duties of Plaintiff's job may be performed anywhere with appropriate equipment and internet and telephone access.

8. Plaintiff is an individual with a disability. Specifically, Plaintiff suffers from attention deficit hyperactivity disorder ("ADHD"). Plaintiff's ADHD is an impairment that adversely impacts major life activities, such as concentrating, reading, thinking, and other functions of the brain.

9. On or about May 14, 2018, Plaintiff requested a reasonable accommodation of her disability, namely, being allowed to work from home in order to reduce distractions and to better allow Plaintiff to focus on her work in a more controlled environment. At all relevant times, Plaintiff was able to perform the essential duties of her job from home.

10. Other persons occupying the same job title and with the same duties but in other offices are routinely allowed to work remotely for various reasons by Defendant, however, Defendant's managers in the Hampton office have consistently expressed hostility toward remote work, even as a disability accommodation. Additionally, upon information and belief, many, if not most, of Defendant's employees companywide with similar job duties as Plaintiff had have generally worked remotely during some or all of the ongoing COVID-19 pandemic.

11. Plaintiff was ultimately approved for her reasonable accommodation by Defendant's corporate office in Wisconsin. However, almost immediately after her request was

made and became known to them, Plaintiff's department managers in Hampton engaged in a pattern of harassment, discrimination and retaliation. Among other things, supervisory staff changed Plaintiff's seat and team assignment by emptying Plaintiff's desk and removing her personal items and moving her to a higher-traffic, and thus more distracting, area of the office, berated her without cause and subjecting her to publicity and ridicule in the workplace regarding her disability. Plaintiff complained to Defendant's corporate Human Resources ("HR") department in Wisconsin on or about May 29, 2018 about her treatment. *See* Exhibit 4.

12. On or about June 14, 2019, Plaintiff arrived to work following a period of absences due to her ten-month-old baby's hospitalization and found that she had been terminated due to alleged unexcused absences. *See* Exhibit 5. Plaintiff was able to demonstrate to the corporate HR department that the stated reason for termination was false and was reinstated to her position.

13. Following Plaintiff's reinstatement, Plaintiff's departmental managers in Hampton, including Kendra Minor and Azure Lucas, refused to allow Plaintiff's reasonable accommodation for a period of months, despite it having been approved by the HR department, claiming that it caused an undue hardship. Ms. Minor additionally attempted to force Plaintiff to take a lower-paying and less skilled position in order to be allowed to attempt to qualify for her reasonable accommodation, despite it having already been approved by the corporate HR department for Plaintiff in her provider certification analyst position.

14. As Plaintiff began working mostly from home in or around September of 2018, Defendant, by and through the Hampton departmental management, continued to harass and discriminate against her by, *inter alia*, harshly criticizing Plaintiff in front of others, demeaning Plaintiff by removing her from long-term projects (on which Plaintiff was working successfully)

4

and assigning her to projects requiring less skill and expertise and preventing Plaintiff from correcting two incorrect quality assurance scores in violation of company policy. The Hampton departmental supervisors additionally prevented Plaintiff from applying for promotions.

15. Ms. Minor further harassed and discriminated against Plaintiff by refusing to provide her with a company telephone line at home to conduct company business, in violation of Defendant's policies and remote worker contract. Instead, Ms. Minor told Plaintiff to use her personal cellular telephone for company work. Plaintiff reported this to her department director, Lisa Walseth ("Ms. Walseth"), who stated that she would personally order Plaintiff a telephone and line, but apparently never followed through, as Plaintiff did not receive a company telephone or line. Ms. Minor additionally intentionally assigned work to Plaintiff requiring certain equipment which she refused to provide, thus setting Plaintiff up for failure.

16. On or about February 13, 2019, Plaintiff requested via email to Ms. Walseth that she be moved from Azure Lucas' team to another team due to harassment. *See* Exhibit 6. Ms. Walseth complied and moved Plaintiff to Kelly Morris' team. *Id.* At that time, Ms. Walseth noted no deficiencies with Plaintiff's job performance. *Id.*

17. On or about February 21, 2019, Plaintiff's yearly review stated that she was an "outstanding contributor" and Plaintiff was given an incentive bonus. Furthermore, during the first quarter of 2019, Plaintiff had 100% claims accuracy, surpassing the average for her team and the department as a whole. *See* Exhibit 7.

18. In March of 2019, Plaintiff was requested by Defendant's corporate compliance officer, Leslee McPhail, to give information as a part of a purported investigation into Ms. Minor's conduct toward another employee. Plaintiff was hesitant to participate, but ultimately did so.

19. The harassment and discriminatory treatment of Plaintiff by her departmental managers continued until she was terminated in late April of 2019.

20. Plaintiff was terminated for various stated reasons such as (a) excessive use of Defendant's Skype messaging system; (b) having her very young child at home while working remotely; (c) low productivity; and (d) violations of policy.

21. The reasons stated by Defendant in terminating Plaintiff were pretextual and designed to conceal discriminatory intent and not the true reasons for terminating her. In particular, to Plaintiff's understanding, Defendant had no actual policy regarding Skype usage beyond use of offensive language and, regardless, Plaintiff's Skype usage was not excessive and was less than that of similarly-situated co-workers. Plaintiff is additionally aware of no policy prohibiting remote workers from having their child present at home while working remotely. Furthermore, Plaintiff's productivity was well within the norm for her department.[1] At all times, Plaintiff met the legitimate business expectations of Defendant.

22. Defendant additionally violated company policy with regard to the manner of Plaintiff's termination by not following its standard discipline escalation steps and by not affording Plaintiff the standard "decision-making day" in which Plaintiff would have been allowed to present her side of the story and propose an improvement plan.

**Count I—Retaliation in Violation of 42 U.S.C. §§ 12101, *et seq.***

23. Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-Two as if set out in full herein.

---

[1] To the extent Plaintiff had any production issues, they were the result of Defendant failing and refusing to provide her with appropriate equipment and otherwise seeking to undermine her job performance.

24. Defendant discriminated against Plaintiff with regard to the terms and conditions of her employment, specifically, with regard altering the terms and conditions of her employment and, ultimately, her termination, due to her engagement in protected activity, namely, seeking and obtaining a reasonable accommodation and making workplace complaints regarding discrimination and harassment against her.

25. This retaliation against Plaintiff for engaging in protected activities constituted violations of the Americans with Disabilities Act of 1990 and the ADA Amendments Act of 2008. *See* 42 U.S.C. §§ 12101, *et seq.*

26. The Defendant's conduct was motivated by malice, spite and ill will; was willful and wanton, and evinced conscious disregard for the rights of Plaintiff.

27. Defendant's acts of malice, spite, and ill will which evince a conscious disregard for the rights of Plaintiff include, but are not limited to: altering the terms and conditions of Plaintiff's employment and ultimately terminating Plaintiff.

28. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, lost benefits and other wages, emotional distress and attorney's fees and costs.

**Count II—Discrimination in Violation of 42 U.S.C. §§ 12101,** *et seq.*

29. Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-Two as if set out in full herein.

30. Defendant terminated Plaintiff's employment and otherwise discriminated against Plaintiff in the terms and conditions of her employment because she suffered from a disability, and for reasons arising from discrimination against Plaintiff on account of that disability.

31. The termination of Plaintiff and the discrimination against Plaintiff in the terms and conditions of her employment constituted a violation of the Americans with Disabilities Act 42 U.S.C. § 12101, *et seq*. (including § 12117 which cross-references the jurisdictional provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(l) and (3)).

32. The Defendant's conduct was motivated by malice, spite and ill will; was willful and wanton, and evinced conscious disregard for the rights of Plaintiff.

33. Defendant's acts of malice, spite, and ill will which evince a conscious disregard for the rights of Plaintiff include, but are not limited to: treating Plaintiff in a different manner because of her disability, subjecting Plaintiff to harassment and/or a hostile workplace, and terminating her because of her disability and in spite of her ability to perform the essential functions of her position with the reasonable accommodations described herein.

34. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, lost benefits and other wages, emotional distress and attorney's fees and costs.

35. Due to the severity of Defendants' conduct, Plaintiff is also entitled to punitive damages.

### Count III—Discrimination in Violation of the Rehabilitation Act of 1973

36. Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-Two as if set out in full herein.

37. Defendant is a federal contractor subject to Section 503 of the Rehabilitation Act of 1973.

38. Defendant willfully and intentionally discriminated against Plaintiff due to her disability in that it excluded or otherwise denied Plaintiff equal jobs and/or benefits and

ultimately terminated her because of her disability and her receipt of a reasonable accommodation.

39. The Defendant's conduct was motivated by malice, spite and ill will; was willful and wanton, and evinced conscious disregard for the rights of Plaintiff.

40. Defendant's acts of malice, spite, and ill will which evince a conscious disregard for the rights of Plaintiff include, but are not limited to: altering the terms and conditions of Plaintiff's employment and ultimately terminating Plaintiff.

41. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, lost benefits and other wages, emotional distress and attorney's fees and costs.

WHEREFORE, the Plaintiff, Jami Lynn Wolfe, by counsel, prays that this honorable Court grant her such relief to which she is entitled including, but not limited to, lost back pay, loss of front pay, unpaid wages, compensatory damages and punitive damages, as well as pre- and post-judgment interest, attorney's fees and litigation costs and such other legal and equitable relief as deemed just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

                                             **JAMI LYNN WOLFE,**

                                      /s/Steven B. Wiley
                                     Steven B. Wiley (VSB No. 47531)
                                     WILEY LAW OFFICES, PLLC
                                     440 Monticello Ave., Suite 1817
                                     Norfolk, Virginia 23510
                                     (757) 955-8455
                                     (757) 319-4089 facsimile
                                     swiley@wileylawoffices.com

                                     *Counsel for Plaintiff*